UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
NANTONG SANHAI GARMENT CO.,
LTD.,

                Plaintiff,

        - against –

FAB MILL INC., JUNTAI LI, and
DOES 2 THROUGH 50,

                Defendants.
------------------------------X

**MEMORANDUM AND ORDER**

21 Civ. 859 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    Nantong Sanhai Garment Co. ("plaintiff"), a Chinese export company, brings this action against Fab Mill Inc. ("Fab Mill"), a clothing manufacturer and distributor based in New York, along with Fab Mill's sole owner and CEO, Juntai Li (a/k/a Jonathan Li), and Does 2 through 50 (collectively, "defendants").  Plaintiff asserts several causes of action against defendants arising from their alleged failure to pay plaintiff for numerous orders of women's clothing.  Presently before the Court is defendants' motion to dismiss certain of plaintiff's claims — namely, breach of contract under the United Nations Convention on the International Sale of Goods ("UN CISG"), unjust enrichment, conversion, corporate veil piercing, alter ego liability, promissory estoppel/detrimental reliance, fraudulent conveyance,

constructive fraudulent conveyance, and fraud.[1]  Defendants do not seek to dismiss plaintiff's state law claims for breach of contract, goods sold and delivered, and account stated (the "contract claims").  For the reasons explained below, defendants' motion to dismiss is denied without prejudice as to plaintiff's veil piercing, alter ego, and UN CISG claims.  The remainder of defendants' motion is granted.

## I.   BACKGROUND

The following facts are taken from the First Amended Complaint, ECF No. 19 ("FAC"), and are accepted as true solely for the purposes of this motion.  Fab Mill began purchasing women's clothing from plaintiff in 2009, gradually increasing the quantity of the orders over time.  FAC ¶¶ 16-18.  In 2017, Fab Mill started missing payments on its purchase orders and began accruing overdue invoices.  Id. ¶ 19.  Jonathan Li, Fab Mill's sole owner and CEO, promised plaintiff that Fab Mill's balance would soon be paid off and assured plaintiff that he always paid his debts.  Id. ¶¶ 62, 64, 82.  Between 2017 and 2020, Fab Mill submitted to plaintiff at least nineteen purchase orders.  Id. ¶ 21.  Assuaged by Li's reassurances and the receipt of minimal payments by Fab Mill, plaintiff continued fulfilling Fab Mill's orders.  Id. ¶¶ 20, 22.

---

[1] Defendants take the position that if their motion is granted, the complaint against Jonathan Li should be dismissed in its entirety.

By March 2020, Fab Mill's outstanding balance for unpaid shipments of clothing had grown to $1,209,678.53.  Id. ¶¶ 24, 31.  It appears that plaintiff issued invoices for the shipped clothing and that Fab Mill did not object to those bills.  Id. ¶¶ 25, 27.  Although Fab Mill accepted the clothing, acknowledged receipt, and promised to pay, no payments on this balance were ever made.  Id. ¶¶ 27-28, 39.

## II.  DISCUSSION

### A.  Veil Piercing and Alter Ego Liability

Plaintiff asserts separate causes of action to pierce the corporate veil and to obtain a declaratory judgment that the defendants are the alter egos of each other, both of which seek to hold Li personally liable for Fab Mill's alleged debts.  Under New York law,[2] these theories of liability are not viable as standalone claims.  See Advanced Knowledge Tech., LLC v. Fleitas, No. 21 Civ.

---

[2] Neither party has addressed the issue of choice of law.  In the face of such silence, "the Court need not raise the issue sua sponte, and the parties are deemed to have acquiesced in the application of the law of the forum."  Elliott v. Nestle Waters North America Inc., No. 13 Civ. 6331 (RA), 2014 WL 1795297, at *9 (S.D.N.Y. May 6, 2014) (quoting Keles v. Yale Univ., 889 F. Supp. 729, 733 (S.D.N.Y. 1995), aff'd, 101 F.3d 108 (2d Cir. 1996)).  Accordingly, plaintiff's claims will be analyzed under New York law, with the caveat that plaintiff's contract claims, which are not at issue in this motion, may be determined to be governed by the UN CISG to the extent that there is a conflict between that treaty and state law.  See Hanwha Corp. v. Cedar Petrochemicals, Inc., 760 F. Supp. 2d 426, 430-31 (S.D.N.Y. 2011) ("Absent a clear choice of law, the [UN] Convention [on the International Sale of Goods] governs all contracts between parties with places of business in different nations, so long as both nations are signatories to the Convention.") (internal quotation marks and citation omitted) (emphasis in original).

992 (PKC), 2021 WL 6126966, at *7 (S.D.N.Y. Dec. 28, 2021).
Nevertheless, "courts will disregard the corporate form, or . . .
pierce the corporate veil, whenever necessary to prevent fraud or
to achieve equity." Matter of Morris v. New York State Dep't of
Taxation & Fin., 82 N.Y.2d 135, 140 (N.Y. 1993) (internal quotation
marks and citation omitted).  The ultimate decision of whether to
pierce the corporate veil "will necessarily depend on the attendant
facts and equities" at issue.  Id. at 141.

In their briefs, plaintiff and defendants dispute whether
plaintiff has established that Li exercised the degree of control
required to warrant veil piercing/alter ego liability.  Both sides
appear to have missed the forest for the trees.  If plaintiff
prevails on any of its outstanding contract claims, the issue of
veil piercing/alter ego liability will inevitably be explored, if
not in the context of this case then during post-judgment
collection proceedings.  In either scenario, a more fully developed
factual record is required to determine whether Fab Mill's
corporate veil should be pierced.  See Careccia v. Macrae, No. 05
Civ. 1628 (ARR), 2005 WL 1711156, at *3 (E.D.N.Y. July 19, 2005)
("Whether to pierce the corporate veil requires a fact-specific
inquiry in which no single factor is decisive.") (internal
quotation marks and citation omitted); see also Sahu v. Union

-4-

Carbide Corp., 418 F. Supp. 2d 407, 416 (S.D.N.Y. 2005) (granting plaintiff's request to stay court's summary judgment ruling on corporate veil piercing until Rule 56(f) discovery could be conducted).   It would thus be premature to rule on the merits of these "claims" at this stage of the litigation.   Accordingly, defendants' motion to dismiss plaintiff's veil piercing and alter ego claims is denied without prejudice to defendants' ability to resurrect these arguments at a later stage.   Likewise, defendants' request to dismiss Jonathan Li from the entire action is denied.

**B.   United Nations Convention on the International Sale of Goods**

Plaintiff also brings a breach of contract claim under the UN CISG, which is an international treaty that "governs sales contracts between parties from different signatory countries," Transmar Commodity Grp. Ltd. v. Cooperativa Agraria Indus. Naranjillo Ltda., 721 F. App'x 88, 89 (2d Cir. 2018) (internal quotation marks and citation omitted) (summary order), including the United States and China.   See Shantou Real Lingerie Mfg. Co., Ltd. v. Native Grp. Int'l, Ltd., No. 14 Civ. 10246 (FM), 2016 WL 4532911, at *2, n. 3 (S.D.N.Y. Aug. 23, 2016).   The UN CISG "provides a private right of action enforceable in federal court" that may be pursued simultaneously with state law contact claims. D&G Group, S.R.I. v. H.A. Import USA, No. 14 Civ. 2850 (TPG), 2015

WL 694925, at *1-2 (S.D.N.Y. Feb. 18. 2015); see, e.g., Quanzhou Joerga Fashion Co., Inc. v. Brooks Fitch Apparel Group, LLC, No. 10 Civ. 9078 (MHD), 2012 WL 4767180, at *10 (S.D.N.Y. Sept. 28, 2012).

Defendants' only argument against plaintiff's UN CISG claim is that the complaint fails to explicitly allege that the purchase orders at issue are subject to the UN CISG.  While true, the FAC does allege that the parties are domiciled in countries that are signatories to the UN CISG and that the agreements at issue are contracts for the sale of goods.  FAC ¶¶ 35-37.  Those allegations are sufficient to establish the potential applicability of the UN CISG.

Furthermore, the Second Circuit has made clear that the UN CISG applies automatically unless the parties expressly opt-out.  See Transmar, 721 F. App'x at 89 (stating the UN CISG applies "unless the parties clearly indicate an intent to be bound by an alternative source of law") (citation omitted); see also Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., No. 06 Civ. 3972 (LTS) (JCF), 2011 WL 4494602, at *3 (S.D.N.Y. Sept. 28, 2011) ("The [CISG] automatically applies to international sales contracts between parties from different contracting states unless the parties agree to exclude its application.  Where parties wish to

-6-

exercise their right to derogate from the CISG, they must do so explicitly.") (internal quotation marks and citations omitted).

Defendants do not claim that they opted out of the UN CISG or that the parties agreed to be bound by a different source of law. Although both plaintiff and defendants reference New York law throughout their briefs, at this stage of the litigation there is insufficient evidence to conclusively determine the governing law for plaintiff's contract claims. As such, defendants' motion to dismiss plaintiff's UN CISG claim is denied without prejudice to defendants' ability to contest the applicability of the UN CISG at a later stage.[3]

## C.  Fraudulent Conveyance

Plaintiff next asserts claims for fraudulent conveyance and constructive fraudulent conveyance under New York's Debtor and Creditor Law ("DCL").[4]  Constructive fraudulent conveyance claims

---

[3] The Court notes that it is likely immaterial whether the UN CISG or New York law governs the sale agreements.  No party has suggested any meaningful difference or conflict between these sources of law.  Indeed, the elements for a breach of contract claim are nearly identical under the UN CISG, the UCC, and New York law.  See U.S. Nonwovens Corp. v. Pack Line Corp., 4 N.Y.S.3d 868, 871-72 (N.Y. Sup. Ct. 2015).  One of the key differences between the UN CISG and New York law — "the CISG has no statute of frauds, and does not require contracts for the sale of goods to be concluded in writing," Shantou, 2016 WL 4532911, at *3 — does not appear to be relevant here.

[4] Fraudulent conveyances are transfers made with "actual intent" "to hinder, delay, or defraud" creditors.  N.Y. DCL § 276.  Constructive fraudulent conveyances are transfers made without "fair consideration," where the transferor either (1) is insolvent or will be rendered insolvent by the transaction, N.Y. DCL § 273, (2) will possess "unreasonably small capital" after the transaction, N.Y. DCL § 274, or (3) believes it will "incur debts beyond its ability to pay," N.Y. DCL § 275; see In re Sharp Intern. Corp., 403 F.3d 43, 53 (2d Cir. 2005).

arising under the DCL are subject to the standard pleading requirements of Federal Rule of Civil Procedure 8. Saadeh v. Kagan, No. 20 Civ. 1945 (PAE) (SN), 2021 WL 5827942, at *4 (S.D.N.Y. Oct. 20, 2021). For such claims, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Claims of actual fraudulent conveyance, on the other hand, must satisfy the heightened pleading standard set forth in Rule 9(b), which requires that the complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); see Ray v. Ray, 799 F. App'x 29, 31 (2d Cir. 2020).

Despite the fact that plaintiff had — and took — the opportunity to amend its complaint after defendants filed their moving papers, plaintiff offers only the barest of allegations in support of its fraudulent conveyance claims. Plaintiff baldly alleges that since 2017, defendants have transferred money and other assets into personal accounts held by Li and that such transfers rendered Fab Mill insolvent or undercapitalized such that it could not meet the financial obligations owed to plaintiff. FAC ¶¶ 29, 87, 89. Plaintiff also claims that these transfers were undertaken "without fair consideration and with the intent to

defraud Plaintiff." Id. ¶ 88. Such "conclusory allegations [and] legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss" under even the lower Rule 8 pleading standards. Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006) (internal quotation marks, citation, and alterations omitted); see Ray v. Ray, No. 18 Civ. 7035 (GBD), 2019 WL 1649981, at *6, n. 11 (S.D.N.Y. Mar. 28, 2019) (holding "general allegations that the transfers in question were made for less than fair consideration" and rendered defendant insolvent were "mere recitations of the statutory language that are insufficient to satisfy Rule 8") (internal quotation marks, citations, and alterations omitted). Accordingly, plaintiff's actual and constructive fraudulent conveyance claims are dismissed without prejudice.[5] While these claims have not remotely been pled, the Court recognizes that if plaintiff establishes liability for its outstanding contract claims, the fraudulent conveyance claims may be explored in the context of judgment collection.

## D.   Unjust Enrichment, Conversion, and Fraud-Related Claims

Finally, defendants argue that the remaining causes of action at issue in this motion — unjust enrichment, conversion, promissory

---

[5] Plaintiff's twelfth cause of action asserts a separate claim for "fraudulent conveyance: turnover." FAC ¶¶ 96-98. However, the FAC does not specify the statutory authority for this cause of action and plaintiff makes no mention of it in its opposition papers. In any event, because the turnover claim is styled as derivative of plaintiff's conveyance claims, this claim is also dismissed.

estoppel, and fraud — are duplicative of plaintiff's breach of contract claim and thus should be dismissed.  The Court agrees.

To prevail on a claim for unjust enrichment under New York law, a plaintiff must establish that the "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004).  "Notably, under New York law, a plaintiff may not recover under quasi-contract claims such as unjust enrichment where an enforceable contract governs the same subject matter." Amable v. New School, No. 20 Civ. 3811 (KMK), 2021 WL 3173739, at *12 (S.D.N.Y. July 27, 2021) (internal quotation marks, citations, and alteration omitted).

Plaintiff argues that it may plead unjust enrichment as an alternative to its breach of contract claim.  Plaintiff is wrong. "[C]ourts in this District have previously dismissed unjust enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that they shared a contractual relationship." In re Columbia Tuition Refund Action, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) (collecting cases).  Further, the existence of a valid and binding contract "preclude[s] a claim for

unjust enrichment even against a third party non-signatory to the agreement." Law Debenture v. Maverick Tube Corp., No. 06 Civ. 14320 (RJS), 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008) (collecting cases). Here, plaintiff's unjust enrichment claim is predicated on the same allegation underlying its breach of contract claim: defendants failed to make the payments owed under their purchase agreements. Since there does not appear to be a dispute about the existence of a contractual relationship between plaintiff and defendants, plaintiff's unjust enrichment claim is dismissed with prejudice.

Next, "[c]onversion is the 'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" Wechsler v. Hunt Health Systems, Ltd., 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004) (quoting Vigilant Ins. Co. of America v. Housing Authority of El Paso, 87 N.Y.2d 36, 44 (N.Y. 1995)). "Money can be the subject of a conversion action where there is a specific identifiable fund, and an obligation to return or otherwise treat in a particular manner the specific fund in question." Allen v. Cox, No. 10 Civ. 7118 (SAS), 2011 WL 2436705, at *3 (S.D.N.Y. June 16, 2011) (internal quotation marks and citation omitted). The parties dispute whether plaintiff had a right of ownership over the clothing sold to

defendants or to the profits allegedly generated by defendants from reselling the clothing to third parties.  However, the Court need not resolve that disagreement to conclude that plaintiff's conversion claim must fail.

"[E]ven if a plaintiff meets all of the elements of a conversion claim, the claim will still be dismissed if it is duplicative of a breach of contract claim."  AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc., No. 04 Civ. 8832 (KMK), 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007); see Allen, 2011 WL 2436705, at *3 ("[A]n action for conversion of money may not lie where damages are merely being sought for breach of contract."). As with plaintiff's unjust enrichment claim, plaintiff's conversion claim merely duplicates its contract claim and so must be dismissed with prejudice.

In this same vein defendants argue that plaintiff cannot maintain independent causes of action for promissory estoppel/detrimental reliance or fraud.  "It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract."  Russell Pub. Group, Ltd. v. Brown Printing Co., No. 13 Civ. 5193 (SAS), 2014 WL 1329144, at *3 (S.D.N.Y. April 3, 2014) (internal quotation marks and citation omitted).  Nevertheless, "under New York law,

parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." Id. (quoting Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007)).

Plaintiff has failed to plead a set of facts that could support parallel fraud and contract claims. The damages plaintiff seeks for its fraud-related claims are recoverable under its contract claims and plaintiff does not argue that defendants owed a legal duty aside from performance. Further, the alleged misrepresentations at issue — Li's promises that payment was imminent and reassurances that he always paid his debts — are insufficient to maintain a claim for fraud under New York law. See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996) (holding no fraud claim lies where plaintiff alleges only that defendant made "intentionally-false statements" about "his intent to perform under the contract"); Michael Davis Constr. v. 129 Parsonage Lane, 194 A.D.3d 805, 807 (N.Y. App. Div. 2021) (affirming dismissal of fraud claim and holding that "[g]eneral allegations that a party entered into a

-13-

contract while lacking the intent to perform it are insufficient to support a claim of fraudulent inducement"). Accordingly, plaintiff's fraud and promissory estoppel claims must also be dismissed with prejudice.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 10. A remote teleconference will be scheduled for March 10, 2022 at 2:00 p.m.

**SO ORDERED.**

Dated:    New York, New York
          February 23, 2022

_____
      NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-14-